SO ORDERED: February 13, 2009.



**Basil H. Lorch III**
**United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | |
| T P & J CORPORATION, ) | CASE NO. 06-90379-BHL-11 |
| ) | |
| Debtor. ) | |

### ORDER ON DEBTOR'S OBJECTION TO CLAIM OF STEWART TITLE

This matter comes before the Court on the **Objection to Stewart Title Guaranty Co.'s Claim Against the Debtor** filed on February 26, 2008, by the Debtor, TP&J Corporation ["TP&J"], as to Claim No. 62 [the "Claim"] originally filed by Philip A. Rebber on July 12, 2006, and assigned to Stewart as reflected by the Notice of Assignment of claim filed on January 16, 2008.

<u>Factual Background</u>

In 1997, TP&J was owned by its founder Charles Rebber and his sons, Tom and Philip. In September of 1997, the parties signed an agreement to buy out Philip's interest in TP&J. Under the terms of the Agreement, TP&J promised to pay Philip $650,000 over time, and secured that obligation with a mortgage against three pieces of property owned by TP&J, specifically located on

25th Street in Columbus, Indiana; on Center Street, in Columbus, Indiana; and on Ewing Street in Seymour, Indiana. When TP&J filed its bankruptcy petition, Philip filed a claim asserting an unpaid balance of $306,591.51.

On or about September 21, 2001, TP&J borrowed from Jackson County Bank the sum of $1,326,241.59. To secure the note, Jackson County Bank took a mortgage on the 25th Street property in Columbus, Indiana. They did not take a mortgage on the Ewing Street property or the Center Street property. Jackson County Bank believed that they had a first mortgage on the 25th Street property inasmuch as the title company, Stewart Title Guaranty Company ["Stewart"], failed to note the existence of Philip's pre-existing lien, which was filed of record approximately four years prior to the Jackson County Bank's mortgage. The error was discovered when TP&J made a motion to sell the 25th Street property during the course of these proceedings.

Jackson County Bank, at the request of Stewart Title, objected to the sale of the property and ultimately filed an adversary proceeding in the bankruptcy case, alleging that the mortgage of Philip Rebber should be set aside on the grounds of mutual mistake. The parties negotiated to allow the sale to go forward, and it was agreed that a portion of the sale proceeds (approximately $490,000) would be held in Debtor counsel's escrow account until the adversary proceeding was resolved. In the course of mediating the dispute, Stewart Title bought Philip Rebber's claim of nearly $370,000 for the amount of $320,000. Under the terms of the settlement, Philip agreed to assign his claim against TP&J to Stewart. Philip executed an Assignment of Mortgage and an Assignment of Claim on December 26, 2007.

Discussion

The transfer of claims is common practice in bankruptcy proceedings and is governed by

Rule 3001(e). When the rule was amended in 1991, the Advisory Committee Note reflected that "the court's role is to determine whether a transfer has been made that is enforceable under nonbankruptcy law" rather than in policing claims trading. Under the rule, the assignee of a claim is not required to seek Court approval for the assignment and needs only to file a notice of the assignment. The assignor may object to the notice of assignment within twenty (20) days and, if a timely objection is filed, the Court will hold a hearing. If no objection is filed, the assignee is automatically substituted for the assignor without a hearing.

In looking at whether the challenged assignment is valid and enforceable under nonbankruptcy law, the Court turns to Indiana law, which holds that an assignee obtains all rights of the assignor to enforce payment of a claim. *See, Keesling v. T.E.K. Partners, LLC*, 861 N.E.2d 1246 (Ind.App. 2007); *Press-A-Dent, Inc. v. Weigel*, 849 N.E.2d 661 (Ind.App. 2006); *Money Store Inv. Corp. v. Summers*, 849 N.E.2d 544 (Ind. 2006); *Pettit v. Pettit,* 626 N.E.2d 444 (Ind. 1993). That statement of law is accurate even where the assignment is purchased by or from an insurance company. *Simon Property Group, L.P. v. Brandt Construction, Inc.,* 830 N.E.2d 981 (Ind.App. 2005); *INS Investigations Bureau, Inc. v. Lee,* 709 N.E.2d 736 (Ind.App. 1999). Based upon the foregoing, Stewart appears to have a valid claim against TP&J under Indiana law.

While it is generally acknowledged that Rule 3001(e) does not provide authority to disapprove a validly assigned claim based on the underlying terms of the assignment, *see, e.g., In re Burnett*, 306 B.R. 313 (B.A.P. 9th Cir. 2004), courts have been asked to exercise their equitable powers under section 105(a) of the Code to look behind the transfer for evidence of "bad faith" or to consider the effect of the transfer on the administration of the bankruptcy estate or estate property. *See, In re SPM Mfg. Corp.*, 984 F.2d 1305 (1st Cir. 1993); and *In re Olson*, 120 F.3d 98 (8th Cir.

1997).

11 U.S.C. § 105(a) authorizes bankruptcy courts to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title" but that equitable power "must and can only be exercised within the confines of the Bankruptcy Code." *In re SPM*, 984 F.2d 1305 at 1311. "That is, the bankruptcy court has no equitable power to deprive creditors of rights or remedies available to them under the Code. Nor does section 105(a) authorize courts to create substantive rights that are otherwise unavailable under the Code, or to expand the contractual obligations of parties." *Id. (citations omitted)*.

In *SPM*, counsel for the Unsecured Creditors' Committee negotiated an agreement with the primary secured creditor to cooperate in the reorganization proceedings and for a "sharing" in future proceeds. When the parties moved for an order authorizing delivery of sale proceeds, the bankruptcy court rejected the agreement's sharing provision as violative of the distribution scheme of the bankruptcy code. On appeal, the Court not only found that the agreement did not violate the distribution scheme of the Code, but it further rejected the notion that the Committee owed a duty to the estate as a whole. It noted that the Committee "is charged with pursuing whatever lawful course best serves the interests of the class of creditors represented." *Id.* At 1315.

In *Olson*, too, the Trustee asked the court to utilize its equitable powers to reject claims transfers as an abuse of the bankruptcy process. After unsuccessful negotiations with the Trustee for the purchase of their mother's ownership interest in a shopping center, the Olsons d/b/a Viking purchased all of the unsecured claims against the estate and then, along with their mother, moved for dismissal of the bankruptcy case so they could acquire the partnership interest directly from her. The bankruptcy court agreed that Viking had abused the bankruptcy process. On appeal, the Eighth

Circuit noted that Bankruptcy Rule 3001(e) was amended to "limit the court's role in the adjudication of disputes regarding transfers of claim."  Since the existence of a "dispute" depends upon an objection by the transferor and, since only the Trustee objected to the transfers, that Court found that the bankruptcy court had no authority to disallow the transfer.  In regard to the appellee's reliance on 11 U.S.C. § 105, the Court observed in a footnote that the case "turn[ed] on Bankr.R.3001(e)(2) . . . and that rule is not a 'provision of . . . title' 11.  Nor do we see any 'abuse of process' on the part of Viking here.  Viking and the Olson children simply pursued their own economic self-interest." *Id.*, 120 F.3d 98, 102 at n. 4.

The Debtor objects to Stewart's claim because it argues that Stewart is attempting to avoid the financial consequences of its own negligence.  No doubt the Debtor is correct.  Stewart's error negatively impacted Jackson County Bank and exposed Stewart to liability under the terms of its title insurance policy up to the amount of the Bank's loss.  By paying Philip $320,000, Stewart stepped into Philip's shoes and seeks to assert the latter's claim against TP&J and thus offset the Bank's damages. As the transferee in *Olson*, Stewart is merely pursuing its own economic self-interest.

Despite the Debtor's objections to the contrary, Stewart's payment of $320,000 to Philip did not extinguish the mortgage. Stewart issued a title insurance policy to Jackson County Bank and incurred liability thereunder. Stewart owed a duty to the Bank not to Philip. The monies ultimately paid to Philip were paid according to the terms of a settlement wherein Philip agreed to sell his claim for something less than its full value. The terms of that settlement are evidenced by the exchange of documents that accompanied the transaction. Stewart clearly paid the monies in order to secure a more favorable position in these proceedings and thus minimize its loss.

While it is true that Stewart's actions leave less monies in the estate for payment to the unsecured creditors, it does not change the validity of the assignment or constitute unfair dealing. As stated by the Court in *Burnett*, "the consideration supporting a transfer of a claim is not, in the absence of special fiduciary obligations to the debtor or the circumvention of statutory disabilities, pertinent to the validity and allowance of the claim." 306 B.R. 313 at 319. Because Stewart owes no fiduciary obligation to the Debtor or to the estate, and there is no statutory impediment to the allowance of the claim, the Court must DENY the Debtor's Objection to the Claim of Stewart Title Guaranty Company.

###

cc:  Distribution to all counsel.